**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | CR420-124-17 |
| | ) | |
| JOSEPH PARRISH, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Before the Court is Defendant Joseph Parrish's Motion to Dismiss
and Motion to Show Cause ("Motion to Dismiss"), doc. 224, and his
Supplemental Motion to Dismiss and Motion to Show Cause
("Supplement"), doc. 333. Parrish's Motion to Dismiss seeks dismissal of
the indictment against him because of extrajudicial statements about
this case made at a press conference and in a press release sponsored by
the U.S. Attorney's Office for the Southern District of Georgia. Doc. 224
at 12. Parrish also requests that the Court order that individuals,
including a former United States Attorney, who made statements at the
press conference and in the press release to "appear and show cause why
they should not be sanctioned, or otherwise disciplined for violating this
Court's Local Rules." *Id.* at 13.

Parrish's Supplement argues that the Government did not timely oppose his Motion to Dismiss and asks the Court to grant the motion as unopposed.  Doc. 333 at 2.  The Government opposes both motions.  *See* doc. 334 (noting the Government's opposition to Parrish's Motion to Dismiss and arguing that its opposition was timely); doc. 729 (Government's response to Parrish's Motion to Dismiss).   For the following reasons, Parrish's request that the Court consider his Motion to Dismiss as unopposed is **DENIED**.  Doc. 333.  To the extent Parrish's Motion to Dismiss requests that the Court order the individuals who made the extrajudicial statements to show cause, that request is **DENIED**.  Doc. 224, in part.  Additionally, it is **RECOMMENDED** that Parrish's request that the Court dismiss the Indictment against him be **DENIED**.  Doc. 224, in part.

## I. BACKGROUND

The Indictment in this case alleges that twenty-nine individuals, including Parrish, conspired to possess with intent to distribute and to distribute controlled substances in violation of 21 U.S.C. § 846.  *See* doc. 3 (Indictment).  Parrish is also charged with two counts of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1),

one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), and two counts of maintaining drug-involved premises in violation of 21 U.S.C. § 856(a)(1). *Id.*

The Government held a press conference and issued a press release regarding this case. *See* doc. 224 at 2 (Parrish references the press conference and press release); doc. 729-3 (Government's partial transcript of the press conference).[1]  The press release described the investigation of the indicted defendants, and included quotes from the former U.S. Attorney for the Southern District of Georgia. *See* doc. 852-4 (Press Release).  The press conference featured speeches by the former U.S. Attorney and members of law enforcement from various agencies. *See* doc. 729-3.  Parrish argues that five separate statements made by these individuals in the press release and during the press conference violate various provisions of this Court's Local Rules, regulations, and applicable Rules of Professional Conduct, and ultimately interfere with

---

[1]  The full video of the Government's press conference can be found on the Facebook page of WJCL News at https://www.facebook.com/WJCLNews/videos/watch-live-department-of-justice-press-conference-in-savannah/141777467716933/ (last visited March 2, 2022).  The Government's press release can be found on the website of the U.S. Attorney's Office for the Southern District of Georgia at https://www.justice.gov/usao-sdga/pr/nearly-three-dozen-savannah-area-defendants-charged-drug-trafficking-indictment (last visited March 2, 2022).

his right to a fair trial.  *See* doc. 224 at 2 (Parrish identifies four statements which he argues were improper); doc. 761 at 10-11 (Parrish identifies an additional statement).  The Court will address each of the five statements below.  Parrish requests two forms of relief: (1) that the Court "dismiss this cause against him"; and (2) that the Court "issue an Order that [the attorney and FBI agent] appear and show cause why they should not be sanctioned, or otherwise disciplined for violating this Court's Local Rules."  Doc. 224 at 13.

Thirty-five days after filing his Motion to Dismiss, Parrish filed his Supplement arguing that the Government did not oppose his motion within the time allotted by the Court's Scheduling Order, doc. 110.  Doc. 333.  The Government responded that it still had time to oppose Parrish's motion, and that it "absolutely opposes" the motion.  Doc. 334.  The Government later filed a response to Parrish's Motion to Dismiss, doc. 729, Parrish replied, doc. 761, and the Court held a hearing on the motion, doc. 852 (Minute Entry); doc. 921 (transcript).

## II. ANALYSIS

First, the Court will discuss Parrish's request that his Motion to Dismiss be considered as unopposed.  Doc. 333.  Second, the Court will

discuss whether Parrish is entitled to an order to show cause under the Local Rules.  Doc. 224 at 13.  Finally, the Court will address Parrish's argument that the indictment against him should be dismissed.  *Id.*

A. <u>*The Court will consider the Government's opposition to Parrish's motion.*</u>

The Court's Scheduling Order gave Parrish 117 days from the date of his arraignment to file pretrial motions, and the Government "30 days to respond to any defense motion." Doc. 110 at 1.  Parrish timely filed his Motion to Dismiss, doc. 224; 35 days later, Parrish indicated that the Government had missed its deadline to oppose his motion and requested that the Court grant it as unopposed.  Doc. 333 at 1.  The Government contends that the Court's Scheduling Order affords it 30 days after Parrish's deadline to file pretrial motions to respond to any of Parrish's pretrial motions, and that its opposition to Parrish's motion was timely. Doc. 334 at 2.

The Court's practice is to set the deadline for the Government to respond to all defendants' pretrial motions for 30 days after all defendants' pretrial motions are due.  Therefore, the Government's initial opposition to Parrish's Motion to Dismiss was timely.  *See* doc. 110 (setting Parrish's deadline to file pretrial motions for 117 days after his

arraignment on December 14, 2020, doc. 90, making the deadline April 10, 2022); doc. 334 (Government's initial opposition to Parrish's Motion to Dismiss filed February 11, 2021). Additionally, the Government's full Response to Parrish's Motion to Dismiss was timely, since Parrish had received multiple extensions of time to file pretrial motions, and the Government's response was filed within 30 days of Parrish's extended deadline. *See* doc. 412 (extending Parrish's pretrial motion deadline to June 10, 2021); doc. 565 (extending Parrish's pretrial motion deadline again to August 9, 2021); doc. 729 (Government's Response filed September 8, 2021). Accordingly, Parrish's request that the Court consider his motion to dismiss as unopposed is **DENIED**, doc. 333, and the Court will consider the Government's opposition to Parrish's motion.

B. *Parrish may not initiate a disciplinary proceeding as a remedy in this criminal case.*

Parrish requests that the Court issue an order that the individuals who made the extrajudicial statements "appear and show cause why they should not be sanctioned, or otherwise disciplined for violating this Court's Local Rules." Doc. 224 at 13. Attorney discipline is governed by Local Civil Rule 83.5, which is applicable in the context of a criminal proceeding under Local Criminal Rule 1.1. S.D. Ga. L. Crim. R. 1.1 ("[The

6

Local Civil Rules] must be consulted as to matters of procedure and administration not addressed by these [Local Criminal Rules]. *See, e.g.,* . . . LR 83 (attorney admission, discipline, and relations with the jury).").

Under Local Civil Rule 83.5(a),

> Any attorney who appears in a case or proceeding, or who represents a party in interest in a case or proceeding, may for good cause shown, and after notice and hearing, be disbarred, suspended from practice for a definite time, reprimanded, or subjected to such other discipline as the Court may deem proper.

S.D. Ga. L. R. 83.5(a). Disciplinary proceedings under Rule 83.5 are separate proceedings, distinct from any ongoing criminal case, including this prosecution. Parrish points to no rule or authority that would permit him, as a criminal defendant, to take advantage of the Court's own disciplinary rules to require an opposing attorney to appear and show cause. Accordingly, Parrish's request is **DENIED**. Doc. 224, in part.

C. *Parrish may not obtain dismissal of the Indictment for pretrial publicity.*

Parrish argues that the Court should dismiss the indictment against him because the extrajudicial statements violated four standards governing pretrial statements in criminal cases: (1) the Department of Justice ("DOJ") Justice Manual, doc. 224 at 7-8 (citing Dep't of Just.

7

Atty's Manual §§ 1-7.500, 1-7.600, 1-7.610, 1-7.700); (2) the Code of Federal Regulations provision which codifies these Justice Manual standards, *id.* at 8 (citing 28 C.F.R. § 50.2(b)(3)); (3) The Georgia Rules of Professional Conduct, *id.* at 9 (citing Ga. R. Prof. Cond. 3.6 & 3.8); and (4) The Local Criminal Rules of the Southern District of Georgia, *id.* at 12 (citing S.D. Ga. L. Crim. R. 53.1).   Additionally, Parrish argues that this case should be dismissed because the statements prejudiced his constitutional right to a fair trial.  *See id.* at 11-12; doc. 761 at 12-15.

1. *Parrish cannot obtain dismissal under the Justice Manual, the C.F.R., the Georgia Rules of Professional Conduct, or the Local Rules.*

Courts have definitively held that criminal defendants cannot obtain dismissal of an indictment for pretrial publicity in violation of the Justice Manual, the corresponding Federal Regulation, the Georgia Rules of Professional Conduct, or the Local Rules.  First, the Justice Manual itself makes clear that it "provides internal guidance [for the DOJ] only and does not create any rights enforceable in law or otherwise." Dep't of Just. Atty's Manual § 1-7.001; *see also United States v. Grace*, 401 F. Supp. 2d 1057, 1062 (D. Mont. 2005) (§ 1-7.500 of the Justice Manual is "not enforceable by this Court."); *Zepeda v. United States*, 2013

WL 599869, at *3 (C.D. Cal. Feb. 15, 2013) (Justice Manual does not create enforceable rights). *Cf.* doc. 224 at 8 (Parrish even notes that "[t]he [G]overnment will no doubt argue that violations of the Justice Manual create no rights for a defendant . . . ."). The Department of Justice's internal Justice Manual does not support Parrish's requested dismissal.

Second, although Parrish accurately states that the provisions of the Justice Manual related to pretrial publicity are mirrored by the Code of Federal Regulations, doc. 224 at 8 (citing 28 C.F.R. § 50.2(b)(3)), courts have explained that 28 C.F.R. § 50.2 does not create enforceable rights for criminal defendants. *United States v. Lee*, 2015 WL 5667102, at *7 (N.D. Ga. Sept. 25, 2015) ("[The criminal defendant] cannot obtain the relief he seeks under 28 C.F.R. § 50.2 since that regulation does not create a private right of action.") (internal citations and quotations omitted); *United States v. Howard*, 2014 WL 2429315, at *3 n.2 (E.D. La. May 29, 2014) ("28 C.F.R. § 50.2 . . . does not create a private right of action"); *see also Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 121 (D.D.C. 2005) ("Absent a clear indication of congressional intent to create a private right of action

for the enforcement of [28 C.F.R. § 50.2], the Court can not impose one.").[2]
Accordingly, Parrish may not obtain the relief he seeks under this regulation, either.

Third, this Court, like other courts considering similar arguments, has rejected the argument that professional conduct rules confer substantive rights on criminal defendants. *See United States v. Tapp*, 2008 WL 2371422, at \*17 (S.D. Ga. June 4, 2008) (explaining that the ABA Model Rules of Professional Conduct and state rules modeled after them create no substantive rights for criminal defendants); *see also, e.g.*, *United States v. Corbin*, 620 F. Supp. 2d 400, 411 (E.D.N.Y. 2009) ("In ruling in this criminal case, it is not [the Court's] obligation to determine such matters involving the Rules of Professional Conduct.  Instead, it is the Court's obligation to determine whether the press release has compromised this criminal proceeding and the future trial.").  The professional conduct rules do not provide Parrish relief in this case.

---

[2] Parrish cites *United States v. Flemmi*, which noted that 28 C.F.R. § 50.2 "*may* create rights" which criminal defendants can enforce in court.  Doc. 224 at 8 (citing 233 F. Supp. 2d 75, 80 (D. Mass. 2000) (emphasis added)).  *Flemmi*, however, was decided before the *Lee*, *Howard*, and *Hatfill* cases discussed above, which all clarify that the regulation does not create any enforceable rights for criminal defendants.  While none of the cases are binding on this Court, the analysis in the later decisions, including the Northern District of Georgia's decision in *Lee*, is more persuasive.

Parrish also argues that the indictment should be dismissed because the Government's statements violated Local Criminal Rules 53.1(a)&(c).[3]  Doc. 224 at 6-7.  To the extent Parrish argues that several of the statements violated the Local Rules related to pretrial publicity, the Court agrees, as discussed below.  The Court cannot conclude, however, that these improper statements entitle Parrish to the drastic remedy of dismissal.

Although the Court is uncertain which provision of the Local Rules Parrish argues entitles him to dismissal of the case,  Local Civil Rule 83.5 governs attorney discipline, and it applies in criminal proceedings under Local Criminal Rule 1.1.  S.D. Ga. L. Crim. R. 1.1 ("[The Local Civil Rules] must be consulted as to matters of procedure and administration not addressed by these supplemental rules.  *See, e.g.*, . . . LR 83 (attorney . . . discipline . . . .)).  Under Rule 83.5(a):

---

[3] Parrish also argues that the statements violated Rule 53.1(b).  Doc. 224 at 7.  Since Rule 53.1(b) applies to statements made during "a grand jury or other pending investigation of any criminal matter," S.D. Ga. L. Crim. R. 53.1(b), and the statements were made *after* the defendants were indicted, Rule 53.1(b) does not apply to their statements.  Additionally, Rule 53.1(d) does not apply, since it governs statements "during a jury trial of any criminal matter," S.D. Ga. L. Crim. R. 53.1(d), and a trial date has not been set in this case.  The Court will therefore only consider whether the statements violated Rules 53.1(a)&(c).

> Any attorney who appears in a case or proceeding, or who
> represents a party in interest in a case or proceeding, may for
> good cause shown, and after notice and hearing, be disbarred,
> suspended from practice for a definite time, reprimanded, or
> subjected to such *other discipline as the Court may deem*
> *proper.*

S.D. Ga. L. Civ. R. 83.5(a) (emphasis added).  Parrish has not provided

any authority suggesting that this Rule empowers a Court to dismiss an

indictment for a violation of the Local Criminal Rules, and the Court is

unaware of such authority.

Other courts considering similar arguments have found that merely

establishing a violation of local criminal rules related to pretrial publicity

is insufficient for a criminal defendant to obtain a remedy in a criminal

case.  Courts instead turn to the question of whether pretrial publicity

prejudices a criminal defendant's constitutional right to a fair trial.  *See*

*United States v. Silver*, 103 F. Supp. 3d 370, 376 (S.D.N.Y. 2015) (Court

declines to analyze whether public statements made during grand jury

proceedings violate its local rules, since "this is not a disciplinary

proceeding," and turns instead to the constitutional analysis of whether

the public statements violated defendant's right to fair trial); *Corbin*, 620

F. Supp. 2d at 408-11 (recognizing that, even where pre-trial statements

by the Government may violate disciplinary rules, it is not the Court's

obligation, in ruling in the criminal case, to determine matters involving professional conduct); *United States v. Hipkins*, 756 F. Supp. 233, 235 (D. Md. 1991) ("Even if the Court were to have found a violation of the rule, dismissal of the indictment would be inappropriate in this case, because it is highly unlikely that either the press release or the articles will deny the defendants a fair trial, given the early stage at which they were published."); *United States v. Myers*, 510 F. Supp. 323, 328 (E.D.N.Y. 1980) (declining to dismiss an indictment for violation of the court's local rule related to pretrial publicity, since the rules contemplate disciplinary action that would be more appropriate).  In sum, Parrish may not obtain dismissal of the indictment by establishing that the Government's attorney violated the Justice Manual, C.F.R., Georgia Rules of Professional Conduct, or the Local Rules, and his request for dismissal under these standards should be **DENIED**.  Doc. 224, in part.  The Court will instead consider below whether dismissal is required because the statements violated his constitutional right to a fair trial.

   2. *Parrish has not shown that the statements prejudiced his constitutional right to a fair trial.*

Parrish argues that dismissal is warranted because the pretrial statements violated his constitutional right to a fair trial.  *See* doc. 761

at 12-17. "The constitutional guarantee of a fair trial requires that a criminal defendant must be tried by a panel of impartial and indifferent jurors." *Devier v. Zant*, 3 F.3d 1445, 1461 (11th Cir. 1993). A criminal defendant arguing that pretrial publicity violates this right must either show that the publicity resulted in (1) actual prejudice or (2) presumed prejudice. *Coleman v. Kemp*, 778 F.2d 1487, 1489 (11th Cir. 1985); *United States v. Underwood*, 2020 WL 4587036, at *8 (N.D. Fla. Apr. 10, 2020). Actual prejudice is not applicable at the pretrial stage, since it requires a showing that prejudice invaded an actual panel of jurors. *See Coleman*, 778 F.2d at 1537. Presumed prejudice only applies in the rare situation where "prejudicial pretrial publicity . . . so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community." *Id.* at 1490 (internal citation and quotation omitted); *see also Skilling v. United States*, 561 U.S. 358, 380-381 (2010). To establish presumed prejudice, a defendant must show (1) the publicity is prejudicial and inflammatory, and (2) the community is saturated with pretrial publicity. *Devier*, 3 F.3d at 1461.

Even if a defendant establishes presumed prejudice he must show that dismissal is the appropriate remedy, *United States v. Smith*, 2014

14

WL 1744253, at *3 (E.D. Wash. Apr. 30, 2014) (citing *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988)), and that less drastic remedies would be inappropriate. *See United States v. Stanford*, 589 F.2d 285, 299 (7th Cir. 1978) ("The motion for a continuance, or for change of venue, or the voir dire process is the traditional method for challenging the claimed adverse publicity.").

Regardless of whether the pretrial publicity in this case is sufficiently "inflammatory" to implicate Parrish's right to a fair trial, *Devier*, 3 F.3d at 1461, he has not shown that the community is so saturated by publicity that he would be unable to draw an impartial jury. *See Coleman*, 778 F.2d at 1490.  The fact that over one year has passed since the publicity suggests that any prejudice that may have infiltrated the community regarding this case will have dissipated by the time a trial date is eventually set. *See Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007); *see also United States v. Wrensford*, 2021 WL 3161164, at *2 (D.V.I. July 26, 2021) (prejudice from news accounts of a murder published six to nine years prior to trial is diluted by the passage of time); *Altawarh v. Wetzel*, 2017 WL 4855858, at *10 (E.D. Pa. Aug. 31, 2017) ("[T]he passage of five months' time between the pretrial publicity and

the start of trial is a sufficient cooling off period to dissipate the effect of even significantly prejudicial publicity."); *Smith*, 2014 WL 1744253, at *4 ("[T]he Government's press release was issued more than one year before trial is set to commence . . . . Therefore any bias that might have resulted . . . will have likely dissipated by the time of the trial.").

Additionally, the publicity surrounding Parrish's case is minimal relative to the rare cases in which federal courts have found presumed prejudice because of the "'circus atmosphere' generated by sensational pretrial publicity." *United States v. Campa*, 459 F.3d 1121, 1150 (11th Cir. 2006) (In the rare cases where the Supreme Court has overturned convictions under presumed prejudice, "'the kangaroo court proceedings' in combination with the 'circus atmosphere' generated by sensational pretrial publicity deprived the defendant of a fair trial"); *compare Rideau v. Louisiana*, 373 U.S. 723, 724 (1963) (holding that a defendant established presumed prejudice when his unconstitutionally-obtained confession was televised three times in the community where the crime occurred, when each broadcast was viewed by tens of thousands of people in a town with a population of approximately 150,000), *with Murphy v. Florida*, 421 U.S. 794, 800 (1975) (holding that a notorious jewel thief did

not establish presumed prejudice when his crimes and murder indictment "drew extensive press coverage" and "scores of articles").

Even if Parrish could establish presumed prejudice in this case, he has not shown that the drastic step of dismissal of the indictment is warranted. *United States v. Rogers*, 751 F.2d 1074, 1076-77 (9th Cir. 1985) (explaining that dismissal of an indictment is a "disfavored remedy"). Courts have noted the complete absence of federal precedent dismissing an indictment for pretrial publicity, and this Court is similarly unaware of any such precedent. *See Smith*, 2014 WL 1744253, at *4 (citing *United States v. Poindexter*, 725 F. Supp. 13, 37 (D.D.C. 1989) ("there does not appear to be a single precedent anywhere in the federal court system granting so drastic a remedy [as dismissal], no matter how widespread or prejudicial the publicity.")). Parrish does not explain why continuance, a change of venue, or the voir dire process would be insufficient to empanel an impartial jury in this case. *See Stanford*, 589 F.2d at 299 ("The motion for a continuance, or for change of venue, or the voir dire process is the traditional method for challenging the claimed adverse publicity."). For these reasons, Parrish's request to dismiss the

indictment against him based on pretrial publicity should be **DENIED**.

Doc. 224.

### III. CONCLUSION

For the foregoing reasons, the Government's opposition to Parrish's Motion to Dismiss was timely, and Parrish's request for the Court to grant his Motion to Dismiss as unopposed is **DENIED**.   Doc. 333. Additionally, Parrish's request that the Court order the individuals who made the extrajudicial statements to "appear and show cause why they should not be sanctioned, or otherwise disciplined for violating this Court's Local Rules," doc. 224 at 13, is **DENIED**, since the Local Rules do not provide Parrish a remedy in this criminal case.   Finally, since Parrish has not shown that the extrajudicial statements prejudiced his right to a fair trial, it is **RECOMMENDED** that his request to dismiss the indictment against him should be **DENIED**.   Doc. 224.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.   Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.   The document should be captioned "Objections to Magistrate

Judge's Report and Recommendations." Any request for additional time
to file objections should be filed with the Clerk for consideration by the
assigned district judge.

After the objections period has ended, the Clerk shall submit this
R&R together with any objections to the assigned district judge. The
district judge will review the magistrate judge's findings and
recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are
advised that failure to timely file objections will result in the waiver of
rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,
648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F.
App'x 542, 545 (11th Cir. 2015).

## IV. THE COURT'S DISCIPLINARY AUTHORITY

Although Parrish is not entitled to dismissal of the Indictment for
the extrajudicial statements, if the statements violated the Local Rules,
such violations could implicate the Court's disciplinary authority. *See*
S.D. Ga. L. Civ. R. 83.5(a) ("Any attorney who appears in a case or
proceeding, or who represents a party in interest in a case or proceeding,
may for good cause shown, and after notice and hearing, be disbarred,
suspended from practice for a definite time, reprimanded, or subjected to

such other discipline as the Court may deem proper."); S.D. Ga. L. Crim.

R. 1.1 (implementing Local Civil Rule 83 in the criminal context).  The

Court has an interest in ensuring that attorneys practicing before it abide

by its standards of professional conduct set forth by its Local Rules.

Accordingly, the Court will discuss whether any of the statements in this

case violated the Local Rules, which would implicate the Court's

disciplinary authority.   Second, the Court will discuss whether an

exercise of its disciplinary authority is appropriate in this case.

## A. *The publicity violated the Local Rules.*

Under Local Rule 53.1(a),

> It is the duty of the lawyer or law firm not to release or
> authorize the release of information or opinion which a
> reasonable person would expect to be disseminated by any
> means of public communication, in connection with pending
> or imminent criminal litigation with which a lawyer or law
> firm is associated, if there is a reasonable likelihood that such
> dissemination will interfere with a fair trial or otherwise
> prejudice the due administration of justice.

S.D. Ga. L. Crim. R. 53.1(a).  Next, Rule 53.1(c) prohibits lawyers from

making six kinds of statements from the time of arrest until the

beginning of trial:

> From the time of arrest, issuance of an arrest warrant, or the
> filing of a complaint, information, or indictment in any
> criminal matter until the commencement of trial or

disposition without trial, a lawyer or law firm associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement which a reasonable person would expect to be disseminated by any means of public communication, relating to that matter and concerning:

> (1) The prior criminal record (including arrests, indictments, or other charges of crime), or the character or reputation of the accused, except that the lawyer or law firm may make a factual statement of the accused's name, age, residence, occupation, and family status and, if the accused has not been apprehended, a lawyer associated with the prosecution may release any information necessary to aid in his apprehension or to warn the public of any dangers he may present;

> (2) the existence or contents of any confession, admission, or statement given by the accused, or the refusal or failure of the accused to make any statement;

> (3) The performance of any examinations or tests or the accused's refusal or failure to submit to an examination or test;

> (4) The identity, testimony, or credibility of prospective witnesses, except that the lawyer or law firm may announce the identity of the victim if the announcement is not otherwise prohibited by law;

> (5) The possibility of a plea of guilty to the offense charged or a lesser offense; and

> (6) Any opinion as to the accused's guilt or innocence or as to the merits of the case or the evidence in the case.

S.D. Ga. L. Crim. R. 53.1(c).   Rule 53.1(c), however, includes a "safe harbor" paragraph which permits certain statements by attorneys, even if they are violative of Rule 53.1(c)(1)-(6):

> The foregoing shall not be construed to preclude the lawyer or law firm during this period, in the proper discharge of his or its official or professional obligations, from announcing the fact and circumstances of arrest (including time and place of arrest, resistance, pursuit, and use of weapons), the identity of the investigating and arresting officer or agency, and the length of the investigation; from making an announcement, at the time of seizure of any physical evidence other than a confession, admission, or statement, which is limited to a description of the evidence seized; from disclosing the nature, substance, or text of the charge, including a brief description of the offense charged; from quoting or referring without comment to public records of the Court in the case; from announcing the scheduling or result of any stage in the judicial process; from requesting assistance in obtaining evidence; or from announcing without further comment that the accused denies the charges made against him.

S.D. Ga. L. Crim. R. 53.1(c).  Phrased differently, if a statement falls into this safe harbor provision, the statement does not violate Rule 53.1(c).

1. *Likelihood of Plea Deals*

Parrish argues, *see* doc. 761 at 10-11, that the following statement made at the press conference violated Rule 53.1:

> One of the beautiful things is that a lot of these gang affiliates, and not everybody in this case is ganged up, but the reality is, they are the shock collars [sic] in most instances.  How they like to talk about "omerta" and how they keep their mouth shut—bologna.  When they roll over and realize there is no parole in the federal system, they start singing and you pull that thread.

Doc. 729-3 at 3.  First, the Court finds that this statement violates Rule 53.1(c)'s proscription of statements concerning "[t]he possibility of a plea of guilty to the offense charged or a lesser offense," since it indicates that the defendants in this case are likely to cooperate with the Government's investigation in order to receive more favorable sentences.  Second, this is not a statement protected by the safe harbor paragraph (*E.g.*, it does not relate to the "fact and circumstances of the arrest," disclose the "nature, substance, or text of a charge," or "[quote] or [refer] without comment to public records of the Court in the case.").  Accordingly, this statement violated the Court's Local Rules.

## 2. *Local Street Gang*

Parrish argues that the statement at the press conference that this case involved a "local street gang" violated Rule 53.1.  Doc. 224 at 2.  First, the Court finds that the reference to the group as a "local street gang" violates Rule 53.1(c)(1)'s bar against a "lawyer . . . associated with the prosecution" from releasing an extrajudicial statement which "a reasonable person would expect to be disseminated by any means of public communication" related to "the character or reputation of the accused."  S.D. Ga. L. Crim. R. 53.1(c)(1).  Rule 53.1(c)(1)'s prohibition against statements regarding the "character or reputation" of a defendant mirrors the language of the Federal Rules of Evidence.  *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible [subject to several exceptions] to prove that on a particular occasion the person acted in accordance with the character or

trait."). Because of the lack of authority interpreting Local Rule 53.1(c)(1), the Court looks to the Federal Rules of Evidence for guidance.

Courts applying the Federal Rules of Evidence have held that evidence of gang membership is evidence of "bad character" which is only admissible if it falls under one of the rules' exceptions. *See, e.g.*, *United States v. Hamilton*, 2021 WL 5711103, at *4 (E.D. Mich. Dec. 2, 2021) ("Here, [evidence of defendant's gang affiliation] could be — and likely would be — considered by the jury as proof of the defendant's bad character."); *Anderson v. City of Chicago*, 2010 WL 4811937, at *1-2 (N.D. Ill. Nov. 19, 2010) (holding that gang membership is inadmissible character evidence, noting the "substantial prejudice that accompanies gang affiliation"). Although gang membership evidence may be admissible at trial under certain exceptions contained within the Federal Rules of Evidence, *see, e.g.*, *United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997), Local Criminal Rule 53.1(c)(1)'s restriction on pretrial statements regarding the character of the accused does not include any exceptions. Accordingly, the characterization of the group as

a "local street gang" was an impermissible reference to the defendants' character under Local Criminal Rule 53.1(c).

Second, this statement is not protected by the safe harbor paragraph of Rule 53.1(c). The Government argues that Court documents available to the public at the time of the statement supported a "reasonable inference" that the indicted defendants were involved with a "local street gang," and that the statement is therefore a protected reference to "public records of the Court" under the safe harbor paragraph. *See* doc. 729 at 8. The Government's "reasonable inference" standard does not appear in the text of Rule 53.1, and the Court is unaware of authority establishing this standard. *See* S.D. Ga. L. Crim. R. 53.1(c).

The Rule does, however, permit prosecutors at the pretrial stage to release more than verbatim quotations of publicly available Court records. *See id.* (Rule 53.1(c) permits "quoting *or referring without comment* to public records of the Court in the case." (emphasis added)). Courts in other districts have recognized that analogous pre-trial publicity local rules permit releases which rephrase publicly available Court records in ordinary language. *See Lee*, 2015 WL 5667102, at *8

(Department of Justice press release in criminal copyright case characterizing crimes as "criminal efforts to make money by ripping off the hard work and creativity of high-tech innovators" does not violate the Northern District of Georgia's analogous pretrial publicity local rule, since it rephrased the indictment's charges in ordinary language); *Terry v. Carnival Corp.*, 2014 WL 11798519, at *2 (S.D. Fla. Jan. 27, 2014) (The Southern District of Florida's similarly-worded civil pretrial publicity local rule does not restrict a lawyer to directly quoting public court records).  The characterization of the indicted defendants as a "local street gang," however, goes beyond an ordinary-language rephrasing of Court records.

The Government argues that the "local street gang" comment was supported by the following information available in public Court records at the time of the press conference:

- The Indictment "describes a group of individuals working together to affect their goal of possessing with intent to distribute and to distribute controlled substances."  Doc. 729 at 7 (referencing doc. 3 at 2).

- The Indictment states that "one or more members of the conspiracy agreed to possess firearms as tools of the drug trade in order to protect themselves, the drugs, and the proceeds made from the illegal drug distribution, and to retaliate against perceived threats against the organization." Doc. 729 at 7 (citing doc. 3 at 2).

- The Affidavit in Support of the Criminal Complaint states that an FBI agent investigating this group has experience investigating "gangs and organized crime." Doc. 729 (citing 4:19-mj-74, doc. 257-1 at 1-2).[4]

- The Affidavit in Support of the Criminal Complaint states that the defendants "are known to investigators as the '914 GROUP' based on their own self-identification and previous association with 914 E Bolton Street, in Savannah, Georgia." Doc. 729 at 8 (citing 4:19-mj-74, doc. 257-1 at 2).

Although "local street gangs" often exhibit characteristics similar to those raised by the Government, the Court finds that the term is not an

---

[4] Rule 53.1(c) permits reference to "public records of the Court *in the case*." S.D. Ga. L. Crim. R. 53.1(c) (emphasis added). It is unclear whether this language prohibits the Government from referencing information in documents on the docket of 4:19-mj-74, which is a distinct yet related case. Even if the Rule permits reference to this separate docket, however, the statement is still improper.

ordinary-language rephrasing of information available in public Court records when the statements were made.   Many self-named criminal groups use violence to traffic drugs and defend themselves, but membership in a "local street gang" involves stronger indicia of group identity.  *See* Gang, Black's Law Dictionary (11th ed. 2019) ("A group of persons who go about together or act in concert, esp. for antisocial or criminal purposes.   Many gangs have common identifying signs and symbols, such as hand signals and distinctive colors. — Also termed *street gang*" (emphasis added)).   The Court is unpersuaded by the Government's argument that the affidavit's reference to the investigating FBI agent's prior experience with gangs and organized crimes was a publicly available indicator that *this* group was a "local street gang."   Doc. 729 at 7.

The Court is also unpersuaded by the Government's argument at the hearing that "[the defendants] have jewelry that they utilize to sort of rep [the] organization," and are therefore fairly characterized as a "local street gang."   Doc. 921 at 188 (Transcript).   Although jewelry representing allegiance to a criminal group could be an indicator of a group's identity as a street gang, the Government does not cite any Court

records which were publicly available at the time of the press conference which mention this fact.  The Government's Notice of Proffer generally references valuable jewelry seized from the defendants by law enforcement in this case, doc. 134 at 3-5, 7; however, it does not indicate that the jewelry was used to "rep" the organization.[5]  Since the comment characterizing the group as a local street gang went beyond "referring" to the public records of the Court, and instead "comment[ed]" on them, the statement violated Rule 53.1(c).

### 3. *Poison and Fear*

Parrish argues that the reference to the defendants spreading "poison and fear" quoted in the Government's press release violates the Local Rules:

> "Our dedicated law enforcement partners continue to demonstrate our shared commitment to target and eliminate those who would spread poison and fear in our communities."

Doc.   224   at   2   (The   full   press   release   available   at

---

[5]  Even if the Court found that the group's possession of valuable jewelry indicated that it was a "local street gang," that information is contained in the Notice of Proffer, doc. 134, which was filed after the press release and press conference.  *See* Doc. 729 at 3 (the Government acknowledges that the Notice of Proffer was filed several hours after the press conference); Press Release (discussing the press conference, which indicates that the press release occurred after the press conference).  Accordingly, the Notice of Proffer was not a public record of the Court at the time the press conference was held, nor when the press release was issued.

https://www.justice.gov/usao-sdga/pr/nearly-three-dozen-savannah-area-defendants-charged-drug-trafficking-indictment.).  First, the Court finds that the reference to law enforcement "target[ing] and eliminat[ing] those who would spread poison and fear" indicates that the defendants inflict harm on their community, and that the statement therefore violates Rule 53.1(c)(1)'s restriction on public comments concerning "the character or reputation of the accused."  S.D. Ga. L. Crim. R. 53.1(c).

Second, this statement is not protected by the safe harbor provision of Rule 53.1(c).  The Government correctly points out that events detailed in publicly available Court records, such as crimes involving firearms, are likely to instill fear in members of the community who witness them, and that drugs are sometimes referred to as "poison."  Doc. 729 at 6.  The safe harbor paragraph, however, only protects statements which "[quote] or [refer] *without comment* to public records of the Court in the case."  S.D. Ga. L. R. 53.1 (emphasis added).  The reference to "spreading poison and fear" goes beyond referring to information in publicly available Court records; rather, it is commentary on the effects a community experiences from drug and firearm crimes.  Similarly, this statement goes beyond the paragraph's protection of statements which "[disclose] the nature,

31

substance, or text of the charge, including a brief description of the offense charged." S.D. Ga. L. Crim. R. 53.1(c). A protected "brief description" of charges would be, for example, an explanation of the charge's elements in ordinary language. A statement regarding the fear spread throughout a community as a result of charged crimes, however, is not a *description* of the charges. For these reasons, the statement regarding "poison and fear" violated Local Criminal Rule 53.1(c).

### 4. *Firing at Rival*

Parrish argues that the following statement at the press conference violated Rule 53.1:

> In one instance, one of the defendants was captured on hidden camera reportingly firing at a vehicle that he believed was driving away with a rival therein, and no I am sorry we can't show that video with you at this time.[6]

*See* doc. 729 at 8. First, the statement does not run afoul of Rule 53.1(c). Almost the entirety of this statement is protected by Rule 53.1(c)'s safe harbor paragraph, since much of it refers to information in Court records which were publicly available before the press conference. *See* doc. 3 at

---

[6] In its response to Parrish's Motion to Dismiss, the Government notes that Parrish's motion misquotes this statement, and provides a transcript of the press release with the correct language, quoted above. *See* doc. 224 at 2 (Parrish's Motion to Dismiss, incorrectly quoting the statement); doc. 729 at 8 (citing doc. 729-3) (correcting the quote).

19 (Count 14 of the Indictment alleges that Yusef Scott used a firearm in relation to a drug trafficking crime); 4:19-mj-74, doc. 257-1 at 10 (The Affidavit Supporting the Complaint states that "SCOTT was charged with aggravated assault stemming from a May 2020 incident during which he fired multiple rounds at a moving vehicle.").

The Government notes that the "hidden camera" statement was supported by the Notice of Proffer's reference to law enforcement's use of "pole camera monitoring" in this case.  Doc. 729 at 9 (citing doc. 134 at 2).  As discussed, however, the Notice of Proffer was not part of the record at the time the statement was made at the press conference.  Even if the use of hidden cameras was not publicly available information, that disclosure does not violate any of the prohibitions in Local Criminal Rules 53.1(c)(1)-(6).  Additionally, the Government does not cite a publicly available Court record which references the shooter's impression of the identity of the car's occupant.  *See* doc. 729 at 8 ("firing at a vehicle that he believed was driving away with a rival therein").  Even if this detail was not publicly available, however, the Court finds that it is not one of the kinds of impermissible statements listed in Rules 53.1(c)(1)-(6).  Additionally, the Court finds that there is a minimal likelihood that any

component of this statement will "interfere with a fair trial" or "prejudice

the due administration of justice" under Rule 53.1(a).  For those reasons,

this statement does not violate any of the prohibitions in Rule 53.1.

   5. *National Security Issue*

   Parrish argues that the FBI agent violated the Local Criminal

Rules at the press conference by referencing a "national security issue":

> . . . I'm the senior supervisory resident agent of the Savannah
> and Brunswick offices of the FBI here today on behalf of our
> special agent in charge . . . who unfortunately, couldn't be here
> today.  He wanted me to convey that the drug problem in our
> communities has become a national security issue that plays
> itself out on our streets every day.

*See* doc. 224 at 2 (Parrish partially quotes the FBI agent's statement.  The

full              statement              is              available              at

https://www.facebook.com/WJCLNews/videos/watch-live-department-of-

justice-press-conference-in-savannah/141777467716933/).    The Court

cannot conclude, however, that Rule 53.1 applies to this statement.

   The Local Rule regulates pretrial statements by "lawyer[s] or law

firm[s]," and statements "authorized" by lawyers and law firms.  S.D. Ga.

L. R. 53.1(a)&(c).  First, nothing in the record indicates that the FBI

agent making the statement is a lawyer bound by this Court's rules.

Further, although a lawyer appears to have authorized the agent to

speak at the press conference,[7] there is no indication that a lawyer authorized the FBI agent to make the "national security" comment. *See* Press Conference (The FBI agent states that a special agent in charge directed him to refer to the drug problem as a "national security issue," but the record does not indicate that the special agent in charge is a lawyer subject to the Local Rules of this Court.). Accordingly, the Court cannot conclude that the statement violated Rule 53.1.

In sum, although several of the statements Parrish raises do not run afoul of the Local Rules, he has identified three statements which were improper.[8] Since these violations implicate the Court's disciplinary authority, the Court will consider whether to exercise its authority.

---

[7] At the press conference, the FBI agent is introduced with the following statement: "[n]ext I'd ask [the FBI agent] to come forward." *See* https://www.facebook.com/WJCLNews/videos/watch-live-department-of-justice-press-conference-in-savannah/141777467716933/ (7:30).

[8] Parrish raises additional statements from press releases and press conferences sponsored by this District's U.S. Attorney's Office in other cases, arguing that they are "persistent and flagrant violations of this Court's Local Rules to poison the well for prospective jurors in the Southern District of Georgia." Doc. 224 at 3. These statements do not relate to the Government's case against Parrish or his co-defendants, and they do not entitle him to any relief in this case. Some of the statements Parrish raises, however, may implicate the Court's disciplinary authority. *See, e.g.,* doc. 224 at 3 (pointing to a U.S. Attorney's Office press release which refers to a group of defendants as a "white supremacist street gang," and arguing that the Indictment does not indicate that the alleged conspiracy members are white supremacists). Since the Court explained at the hearing that it would not entertain argument related to these additional statements, however, doc. 921 at 159-160

B. *The Court declines to recommend the exercise of its disciplinary authority under Local Rule 83.5.*

Although the Court finds that several statements violated the Local Rules, the Court declines to recommend the exercise of its disciplinary authority in this case. The Court cannot conclude that the violations were sufficiently severe to warrant disciplinary proceedings under Local Rule 83.5. Although the Court does not find the Government's interpretations of the statements compelling, neither does it find them frivolous. The extent to which interpreting the statements to violate the Local Rules requires a relatively minute and technical parsing of their language does not exculpate the U.S. Attorney's Office. The obligations of the Local Rules require attorneys to consider their statements carefully, including to a minute and technical degree. Nevertheless, the technicality of the violation does inform the Court's consideration of the severity of the sanctions. The statements at issue, while they cross the line, do not amount to flagrant violations. The Court, however, reminds the U.S. Attorney's Office that its prosecutors "may prosecute with earnestness and vigor—indeed, [they] should do so. But, while [they] may

---

(Transcript), the Court declines to discuss whether these additional statements were improper.

36

strike hard blows, [they are] not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935).  The U.S. Attorney's Office must ensure that future public communications regarding ongoing criminal proceedings comply scrupulously with S.D. Ga. L. Crim. R. 53.1.

**SO ORDERED, REPORTED, AND RECOMMENDED**, this 4th day of March, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA