IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL ACTION NO.: 4:20-cr-124 |
| v. | |
| JOSEPH PARRISH, | |
| Defendant. | |

**O R D E R**

After a careful de novo review of the entire record, the Court concurs with the Magistrate Judge's January 18, 2022 Report and Recommendation, (doc. 966), to which Defendant Joseph Parrish has filed objections, (doc. 979). Parrish's objections are, for the reasons explained below, **OVERRULED**. Accordingly, the Magistrate Judge's Report and Recommendation is **ADOPTED**, (doc. 966), and his motions to suppress are **DENIED**. (Docs. 683 & 684.)

As the Report and Recommendation explains, from November 2019 through July 2020, law enforcement agents sought, and this Court issued, a series of eleven orders authorizing the interception of telephone communications as part of an investigation into an alleged drug trafficking conspiracy. (See doc. 966 at 1.) Ultimately, that investigation resulted in an indictment of 29 individuals, including Joseph Parrish. (Id. at 4.) Parrish moves to suppress certain intercepted communications, (see generally doc. 683), and the searches of a residence at 155 Junco Way and a 2019 Chevrolet Silverado truck, (see generally doc. 684). The Magistrate Judge recommends that each motion to suppress be denied. (Doc. 966 at 45.)

Parrish's first motion argues that certain intercepted communications should be suppressed, since the application requesting the wiretap of Target Telephone 8 ("TT8")[1] failed to demonstrate necessity under 18 U.S.C. § 2518(1)(c).[2]  (See doc. 966 at 8.)  This requires the application to include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  The Magistrate Judge observed that this Court has already determined that the TT8 application provided sufficient information to meet this standard.  (Doc. 966 at 12-15.)  After repeating the analysis behind that conclusion, the Magistrate Judge determined that Parrish, like his co-defendant, has not met his burden in demonstrating that the application failed to show necessity.  (Id. at 15.)

Parrish objects, arguing that the application for TT8 "on its face establishes the nearly complete success of alternative investigative techniques," and therefore fails to demonstrate necessity.  (Doc. 979 at 2-3.)  He contends that the affidavit "acknowledges that a confidential source had provided valuable intelligence concerning . . . the alleged leaders of the alleged drug trafficking organization" and "also reveals that two confidential sources successfully made controlled purchases of cocaine from [other alleged members]."  (Id. at 3).  He points out that another source recorded phone calls with some of the alleged members.  (Id.)  He argues that these sources were "able to successfully gain access to the very core of the alleged drug trafficking

---

[1]  The application for the wiretap of TT8 identified it as Jontae Keel's telephone.  (Doc. 966 at 2.)  Parrish appears to incorrectly identify himself as the owner of the telephone.  (See Doc. 979 at 3, 5.)  Because the application was for a wiretap of Keel's phone, (see doc. 753 at 5), the Magistrate Judge's Report and Recommendation frequently refers to the investigation as it relates to Keel, (see doc. 966 at 13-15).

[2]  In his motion, Parrish also argues that the order authorizing the wiretap of Target Telephone 9 ("TT9") was not supported by the requisite necessity.  (Doc. 683 at 7.)  However, because Parrish focused his argument on the application for TT8, the Magistrate Judge did the same.  (Doc. 966 at 8-9.)  Parrish did not object to the Magistrate Judge's focus on the TT8 affidavit.  (See generally doc. 979.)

2

organization's activity." (Id.) He does not contest the Magistrate Judge's finding that these sources did not have access to Keel, but argues that their inability to gain access to "every single member of the alleged organization does not mean that the sources were allegedly 'partially' successful." (Id.) He also argues that, although the Report and Recommendation "states that the sources could not make detailed inquiries concerning other purchasers, sources of supply, shipments of drugs, stash locations, or methods of operations," neither it nor the Government "cite any authorities supporting a proposition that confidential sources must allegedly provide information relevant to investigating agents' asserted purposes of their investigation." (Id. at 4, citing doc. 966 at 13.)

Parrish also complains of the Report and Recommendation's finding that the TT8 affidavit "details alleged difficulties with physical surveillance, in particular surveillance of Keel," since the affidavit "details a number of successful uses of physical surveillance in the agents' investigation of the organization." (Doc. 979 at 4.) He also argues that the Magistrate Judge incorrectly counted the number of successful drug purchases by the confidential sources. (Id. at 4-5.) His objection also claims that the Magistrate Judge erred by "failing to analyze the agents' highly successful use of search warrants in their investigation." (Id. at 5.) He observes that the TT8 affidavit "acknowledges that agents possessed probable cause to execute a search warrant for Keel's residence" at the time of the application for the wiretap. (Id.) He ultimately argues that, despite the TT8 affidavit's "conclusory" allegations to the contrary, the alternative investigative techniques "were highly successful in identifying the key personnel in the alleged drug trafficking organization, in discovering the main co-conspirators of the organization, in discovering the stash locations of the organization, and in discovering alleged evidence against Keel and other alleged members of the organization." (Id. at 6.)

3

Upon a de novo review of the application for the wiretap of TT8, (see doc. 753), the Court agrees with the Magistrate Judge's conclusion that the application sufficiently explains why the other investigative techniques either had been used to only limited success or were deemed either futile or too dangerous. (See doc. 966 at 15). As to controlled purchases, the application explains that one confidential source "may" be able to purchase narcotics, but that the source does not have enough access to the inner workings of the organization to achieve the goals of the investigation. (Doc. 753 at 53.) It further explains that another source is unable to conduct controlled purchases from Keel, the owner of TT8. (Id.) The affidavit identified two controlled buys that the Magistrate Judge categorized as having been "deemed a success." (Doc. 966 at 14.) Parrish argues that this is a miscalculation, identifying other "successful purchases" described in the affidavit. (Doc. 979 at 4-5.) However, the controlled buys that were deemed a success were those where confidential sources were able to purchase narcotics directly from the alleged leaders of the organization. (Doc. 753 at 51-52.) The purchases that Parrish identifies were made from a subordinate, and thus not necessarily "successful" in the context of the investigation. (Id. at 51 (explaining Bulloch's history of pushing confidential sources off to subordinates, including Simmons, for narcotics purchases); doc. 979 at 5 (identifying portion of the affidavit discussing controlled purchases from Simmons).) As to surveillance efforts, the application explains that Keel had likely been warned of another member's arrest and would "most likely operate with a heightened sense of awareness in order to avoid surveillance." (Doc. 753 at 50.) And, although investigators did believe they had probable cause to obtain a warrant to search Keel's home, they sufficiently explained why a wiretap would provide additional information about possible other locations where the members either stored or distributed narcotics and provide additional probable cause. (Id. at 59-60.)

Section 2518(1)(c) does not require that an application contain a "comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves." United States v. Nixon, 918 F.2d 895, 901 (11th Cir. 1990) (internal quotation marks and citation omitted). The Eleventh Circuit's decision in United States v. De La Cruz Suarez, cited by Parrish, (doc. 979 at 5-6), supports the Magistrate Judge's analysis of the affidavit in the context of a conspiracy investigation. 601 F.3d 1202, 1213-14 (11th Cir. 2010). There, the Court determined that an affidavit in support of a wiretap application sufficiently demonstrated necessity, in part because the investigator testified that "a wiretap was necessary to determine the scope of the conspiracy, and all of its members." Id. at 1214. Investigators were not "required to comprehensively exhaust all other techniques before requesting authorization for electronic surveillance." Id. Similarly, here, investigators sufficiently described alternative investigative techniques that had either been used to limited success, or were deemed either futile or too dangerous to use in the ongoing investigation into the alleged criminal conspiracy. Considering the presumption of validity attached to wiretap orders, see United States v. Flores, 2007 WL 2904109, at *5 (N.D. Ga. September 27, 2007) (citing United States v. Mitchell, 274 F.3d 1307, 1310 (10th Cir. 2001)), Parrish has not met his burden of showing that the necessity provisions were not met by the application for the interception of TT8. His objections on those grounds are **OVERRULED**.

Parrish also argues for suppression of the wiretaps because the recordings were not timely sealed. (See doc. 683 at 14-16.) He objects to the Magistrate Judge's recommendation that the delays in sealing the recordings from TT8 and TT9 were satisfactorily explained by the Government. (Doc. 979 at 7.) The recordings from TT8 and TT9 were both untimely sealed. (See 966 at 19 (noting that the government concedes that the TT8 recordings were not timely

5

sealed); id. at 20-21 (discussing the delay in sealing the recordings from TT9).)  As the Magistrate Judge explains, "where the Government does not seal the recordings 'immediately,' it must provide a 'satisfactory explanation,' which requires it to explain why a delay occurred and why it is excusable."  (Id. at 17 (quoting United States v. Ojeda Rios, 495 U.S. 257, 265 (1990)).)  The Magistrate Judge determined that the explanation offered by the Government, through the testimony of Special Agent Savannah Solomon, is satisfactory.  (Doc. 966 at 19-22.)  Parrish objects, arguing that the "facts relied upon in the Report [and Recommendation] constitute an explanation of *why* the delay in presenting sealed recordings to the Court occurred," but that "the facts are insufficient to show that the delay was excusable."  (Doc. 979 at 9.)  After an independent review of Solomon's testimony, (see docs. 852-2 at 53-100; 921 at 95-126), the Court agrees with the Magistrate Judge.  Solomon's testimony about the impact of COVID-19 mandated staffing levels at the FBI's Atlanta office, and the associated delays in downloading and shipping the physical recordings, is a plausible and satisfactory explanation for the delays in sealing the recordings from TT8 and TT9.  (See doc. 932 at 6 (Order finding Solomon's explanation as to the delay in sealing TT8 satisfactory); see also doc. 921 at 99-107 (testimony explaining efforts to seal TT9 recordings).)  His objections on those grounds are **OVERRULED**.

Parrish's second motion to suppress challenges the search of his residence at 155 Junco Way and of his 2019 Chevrolet Silverado.  (Doc. 966 at 22, citing doc. 684 at 2.)  The Magistrate Judge exhaustively analyzed each of the five arguments Parrish offers in support of his motion and recommends that the motion be denied.  (Id. at 22-43.)  The search of 155 Junco Way was conducted pursuant to a warrant.  (Doc. 966 at 23.)  The Report and Recommendation discussed the search warrant application and affidavit and found that the "affidavit at issue supports the finding of probable cause to search Parrish's home at 155 Junco Way," since the affidavit "linked

6

Parrish and 155 Junco Way," and "the 'totality of the circumstances' presented in the affidavit indicated that there was a fair probability of discovering contraband" at the house. (Id. at 27, 29.) It further found that the information in the affidavit was not stale since the facts presented "suggest an ongoing drug operation." (Id. at 30.)

Parrish objects, arguing that the affidavit failed to establish probable cause, and, because it "contained no facts showing any contraband or evidence located at 155 Junco Way within the 5 weeks preceding the issuance of the search warrant," the information was stale. (Doc. 979 at 11-12.) Parrish only focuses on one suspected delivery of marijuana, which did occur about five weeks prior to the issuance of the warrant, and waves off another suspected delivery of marijuana, much closer in time to the warrant, since "the Report [and Recommendation] fails to clarify that the alleged activity on July 11, 2020 did not occur at Junco Way." (Id. at 11.) His characterization of the Magistrate Judge's discussion of the July 11, 2020 alleged drug delivery is incorrect—the Report and Recommendation discussed the suspected drug delivery at one location, after which Parrish made two stops and then returned to the area of his home. (Doc. 966 at 24-25, 28.) He does not address the other information from the affidavit relied upon by the Magistrate Judge, including two intercepted conversations that indicated to the agent that Parrish had narcotics at his house. (Doc. 966 at 28.) His objections mostly repeat the arguments from his initial motion, and nothing raised by Parrish mandates a different result than that reached by the Magistrate Judge. The affidavit provided sufficient probable cause, and the information the issuing judge relied upon was not stale. Parrish's objections on these grounds are **OVERRULED.**

Parrish also objects to the Magistrate Judge's determination that the search warrant for 155 Junco Way particularly described the items to be seized. (Doc. 979 at 12 citing doc. 966 at 34.)

The Report and Recommendation sufficiently analyzes this argument and concludes that the warrant "particularly described the items to be seized, and those items reasonably fell within the scope of probable cause set forth in the affidavit to search the house for evidence of drug possession and distribution criminal conduct." (Doc. 966 at 34-35.)  Parrish's objections do not impact the Magistrate Judge's thorough analysis, and, after an independent review of the search warrant, the objection on these grounds is **OVERRULED**.

Parrish next objects to the Magistrate Judge's finding that the Chevrolet Silverado was properly searched pursuant to the search warrant for the residence located at 506 Barberry Drive, since it was found in the curtilage of that property.  (Doc. 979 at 14, citing doc. 966 at 40, 42.)  His objection conclusorily states that "[t]he Government failed to establish that the location where the Chevy Silverado was found on the property was an area to which the activity of home life extends, and so [ ] properly considered curtilage." (Doc. 979 at 14-15, internal quotation and citation omitted.)  He points to no portion of the Magistrate Judge's analysis that he contends is error, other than the conclusion that the truck was on the curtilage.  (Id.)  After an independent review of the arguments, the Court concurs with the Magistrate Judge's extensive analysis of the curtilage issue.  The objection is **OVERRULED**.

Finally, Parrish objects to the Magistrate Judge's finding that the good faith exception to the exclusionary rule provided by United States v. Leon, 468 U.S. 897 (1984) precludes suppression.  (Doc. 979 at 15.)  Again, he points to no specific factual or legal finding that he contends is error, other than the conclusion that the good-faith exception applies.  (Id.)  The Court concurs with the Magistrate Judge's determination that the good-faith exception precludes suppression of evidence obtained from 155 Junco Way, since the executing officer had a good-faith belief in the warrant's validity.  (Doc. 966 at 44.)  Parrish's objection is **OVERRULED**.

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation, (doc. 966), as the opinion of the Court and **DENIES** defendant's Motion to Suppress Title III Wiretap Evidence, (doc. 683), and **DENIES** defendant's Motion to Suppress Search of 155 Junco Way and a 2019 Silverado, (doc. 684).

**SO ORDERED**, this 7th day of April, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA